UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIZZIE SIMMS, individually and as Special Administrator of the Estate of Gregory Neil Davis,<br><br>    Plaintiff,<br><br>v.<br><br>BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY, et al.,<br><br>    Defendants. | Case No. CIV-23-780-J |

**ORDER**

Plaintiff filed an Amended Petition in Oklahoma County District Court alleging numerous individuals and entities are liable for Gregory Neil Davis' (Davis) death at the Oklahoma County Detention Center (OCDC). (Amend. Pet.) [Doc. No. 1-7]. The matter was removed to this Court, and Defendants Turn Key Health Clinics, LLC (Turn Key), Jessica Hallock, William Cooper, Alicia Irvin, Sinead Eastman, Betty Horn, and Amanda Merriott filed a Joint Amended Motion to Dismiss (Defs.' Mot.) [Doc. No. 19]. Plaintiff has responded [Doc. No. 25], and Defendants have replied [Doc. No. 26]. On due consideration, the motion to dismiss is DENIED.

**I.** **Background**

Mr. Davis died at the OCDC on August 12, 2021. Defendant Turn Key is a private contractor providing medical care at the OCDC. Defendants Hallock, Cooper, Irvin, Eastman, Horn, and Merriott were Turn Key employees and were responsible for providing medical care to inmates at the OCDC in August 2021.

Plaintiff alleges that Davis' death resulted from Defendants' deficient medical care and asserts (1) 42 U.S.C. § 1983 claims for cruel and unusual punishment under the Eighth Amendment; and (2) state-law claims for negligence.

## II.     Standard for Dismissal

Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 8(a) and 12(b)(6).

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." To give "fair notice," the complaint should make clear "exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (cleaned up).

Rule 12(b)(6) allows for dismissal for failure to state a claim upon which relief may be granted. The United States Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

## III.    Plaintiff's Relevant Factual Allegations

Construing the allegations in Plaintiff's favor, and considering them true, Davis was arrested on August 3, 2021, while exhibiting signs of mental illness. *See* Amend. Pet. at 13.[1] He

---

[1] Page citations refer to this Court's CM/ECF pagination.

was transported to the OCDC and placed in an individual cell; no medical intake was performed. *See id.* at 14. Three days later, on August 6, 2021, Davis was examined by a licensed professional counselor.[2] *See id.* at 15–16. He was determined to be suffering from psychosis but was returned to his cell without further treatment. *See id.* A follow-up examination occurred on August 9, 2021; again, Davis was determined to be suffering from psychosis but was returned to his cell without further treatment. *See id.* at 16.

Over the days that followed, while still exhibiting symptoms of psychosis, Davis repeatedly requested medical assistance due to severe abdominal pain. *See id.* at 16–27. His pleas went unanswered, and he was found unresponsive in his cell on August 12, 2021. *See id.* at 26. Davis was transported to a local hospital where he was pronounced dead. *See id.* at 27. At the time of his death, Davis was suffering from a perforated duodenal ulcer. *See id.*

## IV.     Analysis

### A.     Rule 8(a)

Defendants first seek dismissal under Rule 8(a) arguing that Plaintiff's 175-page Amended Petition does not constitute a short and plain statement for relief and contains so much "copied and pasted identical language as to each Defendant in separate sections" that it does not meet the fair notice standard. Defs.' Mot. at 8, 14-15. The Court disagrees.

While the Amended Petition is quite lengthy, it contains well defined and numbered paragraphs. It is also separated into sections identifying the parties, setting forth factual allegations, and detailing the causes of actions. Notably, Plaintiff detailed specific allegations as follows:

---

[2] Plaintiff contends the counselor "was not qualified to perform any medical evaluation of [Davis] and was not included in the explicit list of providers who shall perform a medical evaluation under [state law]." Amend. Pet. at 16.

- Defendant Cooper - Count One, pages 88-93, ¶¶ 337-361; Count Three, pages 168-173, ¶¶ 608-625; Count Four, pages 173-174, ¶¶ 626-630;

- Defendant Irvin – Count One, pages 93-98, ¶¶ 362-381; Count Four, pages 173-174, ¶¶ 626-630;

- Defendant Eastman – Count One, pages 104-107, ¶¶ 413-423; Count Four, pages 173-174, ¶¶ 626-630;

- Defendant Horn – Count One, pages 107-109, ¶¶ 424-434; Count Four, pages 173-174, ¶¶ 626-630;

- Defendant Hallock – Count One, pages 109-111, ¶¶ 435-445; Count Four, pages 173-174, ¶¶ 626-630;

- Defendant Merriott – Count One, pages 112-114, ¶¶ 446-456; Count Four, pages 173-174, ¶¶ 626-630; and

- Defendant Turn Key – Count Two, pages 149-162, ¶¶ 532-573; Count Three pages 168-173, ¶¶ 608-625; Count Four, pages 173-174, ¶¶ 626-630.

In sum, the Court finds that the Amended Petition gives Defendants fair notice as to who is alleged to have done what to whom and the basis of the claims against him or her.

**B.    Rule 12(b)(6)**

    **1.    Deliberate Indifference**

Defendants next claim that Plaintiff has failed to state a valid claim for deliberate indifference.  *See* Defs.' Mot. at 9-16.

        **a.    Deliberate Indifference Standard**

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment."  *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).  The deliberate indifference standard applies to pretrial detainees, such as Davis, through the Fourteenth Amendment.  *See Paugh v. Uintah Cnty.*, 47 F.4th 1139, 1153–54 (10th Cir. 2022).

Deliberate indifference claims contain both an objective and subjective component.  *See id.* at 1154.  The objective competent is satisfied where "the prisoner's medical need was

sufficiently serious." *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1262 (10th Cir. 2022) (cleaned up).

The standard for the subjective component is that the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official "must be aware of the facts from which the inference of a substantial risk of serious harm could be drawn and also draw that inference." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023). Whether a prison official had the "requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence such as whether the risk was obvious." *Id.* (cleaned up).

### b.  Analysis

Defendants concede that Davis' medical need was sufficiently serious. *See* Defs.' Mot. at 10. However, they challenge the subjective component, arguing that Plaintiff failed to plead sufficient facts to demonstrate they "knew of and disregarded Davis' alleged serious medical condition." *Id.* at 13 (cleaned up). But Defendants' argument depends on facts that Plaintiff *did not allege*. For example, Defendants drop a footnote stating that Plaintiff "omits" from her allegations that Davis' medical records show that he refused medical screening. *Id.* at 6. Defendants cite absolutely no evidence to support this statement, likely because any such evidence would be irrelevant to a motion to dismiss. Nevertheless, Defendants then rely on that uncited and unattached evidence to *misstate* Plaintiff's allegations, writing that:

> Plaintiff claims Mr. Davis did not receive a medical evaluation when booked, or at any time during his stay at the OCDC. [Amend. Pet. at] ¶¶ 92, 93, 96, 101. During his booking process, however, medical staff attempted to perform a medical intake screening on Mr. Davis. Mr. Davis, however, refused to answer questions or submit to have his vitals taken. *Id.* Over the next day, medical staff attempted to perform screenings on Mr. Davis several times, but Mr. Davis refused. Following Mr. Davis being unwilling or unable to complete the intake screening, Mr. Davis was scheduled for a mental health evaluation. *Id.*, ¶ 87. Mr. Davis was seen on August

>6, 2021 for this mental health evaluation by Sanaria Okongor, LPC. *Id.*, ¶ 107. During a mental health observation, Okongor did not note any significant indication that Mr. Davis was a danger to himself or others. *Id.*, ¶ 107.

Defs.' Mot. at 6-7. Based on this, Defendants argue that if the Court takes Plaintiff's allegations as true, "Turn Key medical personnel *did* provide medical and mental health care to Mr. Davis, and Mr. Davis repeatedly refused attempts to provide him with treatment and assess him." *Id.* at 13 (emphasis in original). Finally, in their reply, Defendants accuse Plaintiff of misstating the events and claiming her "depiction of events is factually incorrect." [Doc. No. 26 at 2-3].

The Court has reviewed the entire Amended Petition, and in particular ¶¶ 87, 92, 93, 96, 101 and 107, and finds *no* allegations that Davis "refused to answer questions or submit to have his vitals taken" or was "unwilling or unable to complete the intake screening" and finds no allegation that Sanaria Okongor "did not note any significant indication that Mr. Davis was a danger to himself or others." Indeed, Defendants have clearly *added* alleged facts to Plaintiff's Amended Complaint, improperly attributed those alleged facts to Plaintiff, and then asked the Court to assume the added alleged facts are true. This is unacceptable.[3]

Moreover, at this stage the question is simply whether Plaintiff has plausibly alleged that Defendants knew of and disregarded his need for medical care and the Court finds that he has sufficiently done so. Whether Plaintiff's facts – as she actually alleged them – are "factually incorrect" is irrelevant to a motion to dismiss analysis.

    **2.    Municipal Liability**

Defendants next seek dismissal under Rule 12(b)(6) on grounds that Plaintiff failed to state a valid claim that Defendant Turn Key had a specific policy, procedure or custom which caused Davis' death. *See* Defs.' Mot. at 16-24.

---

[3] If such conduct occurs in future briefing, the Court will not hesitate to impose sanctions.

6

As a private entity acting under color of state law, Defendant Turn Key cannot be held liable under a theory of respondent superior but can be found municipally liable.  To state such a claim, a plaintiff must first demonstrate a "municipal policy or custom," which may take one of the following forms:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted).  Then, a plaintiff must allege "a direct causal link between the policy or custom and the injury alleged." *Id.* at 1284 (cleaned up).  Finally, "for claims of inadequate hiring, training, or other supervisory practices, a plaintiff must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Id.* (same).

Notably, "more than one district court has held that, in assessing the pleading standard for municipal liability, the court requires more than boilerplate allegations of a municipal policy, but does not demand specific facts that prove the existence of a policy when a plaintiff would not have access to such information before discovery." *D.G. by & Through Bradley v. Westville Pub. Sch. Dist. No. I-11 of Adair Cnty.*, No. CV-18-045-RAW, 2018 WL 4323917, at *2 (E.D. Okla. Sept. 10, 2018) (collecting cases).

With that, the Court finds that Plaintiff's allegations survive the motion to dismiss.  Plaintiff alleges that Defendant Turn Key, and Defendant Cooper as Defendant Turn Key's decisionmaker with final authority to establish policy, (1) implemented cost-cutting measures to

raise profits which created incentives to understaff medical units and provide inadequate medical care; and (2) failed to properly train or provide guidance to medical staff. *See* Amend. Pet. at 150-162, 168-173. Plaintiff further alleges that Defendant Turn Key's policies were a direct causal link to Davis' death and that the policies and/or failure to train decisions were made with deliberate indifference to their known or obvious consequences. *See id.* These allegations are sufficient at this stage of proceedings.

### 3. Oklahoma Governmental Tort Claims Act (OGTCA) Immunity

Finally, Defendants allege that they are immune from Plaintiff's state law claims under the OGTCA. *See* Defs.' Mot. at 24-28.

In Oklahoma, the OGTCA "is the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort." *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1163 (Okla. 2003). And "an employee of the state or its political subdivision who operates or maintains a jail or correctional facility is exempt from state tort liability under the OGTCA." *Lucas*, 58 F.4th at 1147. In a footnote in *Barrios v. Haskell Cnty. Pub. Facilities Auth.*, 432 P.3d 233, 236 n.5 (Okla. 2018), the Oklahoma Supreme Court assumed, but did not decide, that Turn Key and its staff were employees under the OGTCA. *See id.*

Based on this footnote, Defendants argue they are immune from Plaintiff's state law claims. However, the Tenth Circuit has recently cautioned that the *Barrios* "court did not further analyze if Turn Key or its staff were employees because it was only concerned with whether Oklahoma constitutional torts are subject to the OGTCA" and since "*Barrios*, no Oklahoma court has further developed footnote five, let alone address whether a contracted medical provider is entitled to immunity." *Id.* The court then reversed the district court's ruling, stating that "on a motion to dismiss, it was premature for the district court to determine that Turn Key and [its employees]

were entitled to immunity based on *Barrios*'s non-binding legal assumption, which was decidedly not an express statement of law." *Id.* at 1448.  Instead, the court found, "the proper route in this instance without further guidance from Oklahoma courts" is to determine the OGTCA's applicability to Turn Key "at the summary judgment stage if the factual record is sufficiently developed and the facts are uncontroverted."  *Id.*  Following Tenth Circuit precedent, the Court therefore finds Defendants' argument premature.  *See also Graham v. Garfield County Criminal Justice Authority*, Case No. CIV-17-634-SLP, Doc. No. 114 at 3-4 (W.D. Okla. Mar. 7, 2019) (finding Turn Key's motion for immunity under the OGTCA to be premature at the motion to dismiss stage; cited with approval in *Lucas*, 58 F.4th at 1447-48).

**V.     Conclusion**

Based on the foregoing, Defendants' motion to dismiss [Doc. No. 19] is DENIED.

IT IS SO ORDERED this 24th day of October, 2023.

BERNARD M. JONES
UNITED STATES DISTRICT JUDGE