UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIZZIE SIMS, individually and as Special Administrator of the Estate of Gregory Neil Davis, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. CIV-23-780-R |
| BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY, et al., | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff's Motion for Sanctions [Doc. No. 125] seeking an adverse inference instruction or other appropriate sanctions against Defendants Oklahoma County Criminal Justice Authority and the Jail Administrator (in his official capacity) based on their failure to preserve surveillance video. The matter is fully briefed [Doc. Nos. 136, 138] and at issue.

### *Relevant Background*

This action arises from the death of Gregory Davis while he was incarcerated at the Oklahoma County Detention Center. Plaintiff, the administrator of Mr. Davis's estate, alleges that Mr. Davis's death from a perforated duodenal ulcer resulted from deficient medical care and observation by the jail medical and detention staff. Among other things, she faults the jail for not performing proper welfare checks on inmates and for not responding to obvious medical needs. She asserts claims against numerous defendants

1

under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and negligence under state law.

In the present motion, Plaintiff seeks sanctions against Defendant Oklahoma County Criminal Justice Authority, the entity responsible for the operation of the jail, and Administrator of the jail in his official capacity, for failing to preserve surveillance video depicting the nine days Mr. Davis was incarcerated. The only video that was preserved depicts the jail and medical staff responding to Mr. Davis's cell after he was found unresponsive. Plaintiff argues that the additional video surveillance would have been the most direct evidence of Mr. Davis's condition and the jail staff's actions, including whether they performed welfare checks, in the days preceding the death.

### *Standard*

Federal Rule of Civil Procedure 37(e) governs the preservation of electronically stored information, including video surveillance. *See Hayes v. Owen*, No. 22-CV-00230-CVE-SH, 2023 WL 8543509, at *2 (N.D. Okla. Dec. 11, 2023). The Rule states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > (A) presume that the lost information was unfavorable to the party;
> >
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> >
> > (C) dismiss the action or enter a default judgment.

2

Fed. R. Civ. P. 37(e). "As the party seeking relief, plaintiff bears the burden of demonstrating that the requirements of Fed. R. Civ. P. 37(e) are met." *Bush v. Bowling*, No. 19-CV-00098-GKF-FHM, 2020 WL 5423986, at *2 (N.D. Okla. Sept. 10, 2020).

## *Discussion*

The first step in the Rule 37(e) analysis is to determine whether the ESI "should have been preserved in the anticipation or conduct of litigation." This requirement is based on the common-law "duty to preserve relevant information when litigation is reasonably foreseeable." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. In deciding "whether and when a duty to preserve arose[,] [c]ourts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." *Id*. Notably, several district courts have concluded "that government defendants should reasonably anticipate litigation when a person dies while in the government's custody." *Bush*, 2020 WL 5423986, at *3 (citing *Bistrian v. Levi*, — F. Supp. 3d —, 2020 WL 1443735, at *6 (E.D. Pa. Mar. 24, 2020) (collecting cases)). But ultimately, "the court's decision as to when a party was on notice must be guided by the particular facts of each case." *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1164 (D. Colo. 2015).

Plaintiff has met her burden of showing that Defendants should have preserved additional video surveillance in the anticipation of litigation. Deposition testimony from the jail employees that investigated Mr. Davis's death shows they appreciated the need to preserve evidence related to Mr. Davis for potential future litigation or criminal action. Doc. No. 125-1, 50:1-51:10; Doc. No. 125-3, 22:21-23:18, 30:9-31:21; Doc. NO. 136:1, 14-17; Doc. No. 138-1, 48:11-25. The deposition testimony further establishes that the

3

investigators recognized the need to preserve evidence showing what transpired in the hours before Mr. Davis was found unresponsive, including for the purpose of showing whether the welfare checks were performed. *Id.* Thus, the OCCJA was on notice that Mr. Davis's in custody death was likely to result in litigation and that surveillance video of the hours preceding his death, not just the moments where he was found unresponsive, would be relevant.

The next step in the Rule 37(e) analysis is to determine whether the information was "lost because a party failed to take reasonable steps to preserve it" and if so, whether "it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Plaintiff has established, and Defendants do not genuinely dispute, that the video surveillance could have been easily preserved but Defendants instead allowed the video to be deleted or written over.

Because these foundational requirements are satisfied, the Court next considers whether sanctions under Rule 37(e)(1), providing for curative measures upon a finding of prejudice, or Rule 37(e)(2), providing for more severe sanctions upon a showing of intent, are warranted. Taking the latter provision first, the sanctions outlined in Rule 37(e)(2) are not appropriate because Plaintiff has not established that Defendants acted with an intent to deprive the other party of the information. The investigator responsible for preserving the surveillance video testified that the video was not properly protected in the computer system, that it was a mistake, and that he simply forgot to complete the protection process. Doc. No 125-3 23:19-24:9, 26:21-26:24. Although this might suggest that Defendants were

negligent in failing to preserve additional video evidence, "[n]egligent or even grossly negligent behavior does not logically support" sanctions under Rule 37(e)(2).

Whether curative measures under Rule 37(e)(1) are warranted is another matter. Such measures are only appropriate "upon finding prejudice to another party from loss of the information." "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Defendants argues that the lack of surveillance video is not prejudicial because the cameras do not see inside the prison cells or record audio.[1] The lack of audio and video inside the cell, which Plaintiff does not dispute, undercuts Plaintiff's argument that the missing video would provide compelling evidence of Mr. Davis's medical condition leading up to this death. However, the surveillance video would undoubtedly provide objective evidence of whether and when welfare checks occurred, which is a significant component of Plaintiff's claims. Although there are log books and witness testimony describing the welfare checks, Plaintiff has introduced evidence indicating that the log books are sometimes forged and the welfare checks are not always performed properly. The surveillance video would have lent credibility to Plaintiff's theory. However, the prejudice to Plaintiff is somewhat reduced

---

[1] Actually, the bulk of Defendants argument is directed at chastising Plaintiff for failing to obtain body camera footage from the police officers that initially arrested Mr. Davis, nine days before he died at the jail. This argument is misplaced. The issue here is whether Defendants satisfied their obligation to preserve surveillance video of the jail. Although the body camera footage may be relevant to the claims and defenses in this action, that footage is hardly the same as the jail surveillance video which, as explained above, is relevant to Plaintiff's claim that jail staff failed to perform welfare checks in the hours preceding Mr. Davis's death.

given that the missing footage did not record audio or video footage of Mr. Davis while he was confined to his cell.

Having concluded that the requirements of Rule 37(e)(1) have been established, the Court "may order measures no greater than necessary to cure the prejudice." Permitting limited evidence and argument to the jury explaining that there was additional video surveillance but Defendants did not preserve the video is an appropriate measure to cure the prejudice to Plaintiff. The parties may present their positions as to the scope of evidence and argument that should be permitted on the subject at the pre-trial conference.

Accordingly, Plaintiff's Motion for Sanctions [Doc. No. 125] is GRANTED, as set out above.

IT IS SO ORDERED this 3rd day of February, 2026.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE