UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIZZIE SIMS, individually and as Special Administrator of the Estate of Gregory Neil Davis, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. CIV-23-780-R |

## **ORDER**

This action arises from the death of Gregory Neil Davis while he was incarcerated as a pretrial detainee at the Oklahoma County Detention Center. Plaintiff, as special administrator of the estate of Mr. Davis, alleges that numerous jail and medical defendants acted with deliberate indifference to Mr. Davis's serious medical needs in violation of the Fourteenth Amendment and were negligent under state law. Now before the Court are three motions seeking to exclude or limit expert testimony pursuant to Federal Rule of Evidence 702: Plaintiff's Motion to Exclude or Limit Testimony of Dr. Paul Adler [Doc. Nos. 131, 135, 139], Plaintiff's Motion to Exclude or Limit Testimony of Kathryn J. Wild, RN [Doc. Nos. 130, 137], and Medical Defendants' Motion to Exclude the Expert Opinions of Lori Roscoe, PhD., APRN [Doc. Nos. 123, 143]. In light of the parties' submissions, the Court finds that a formal hearing is not necessary to resolve these motions.

## STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

This Rule "imposes on a district court a gatekeeper obligation to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting D*aubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "This gatekeeper function applies to all expert testimony, not merely to that deemed to be 'scientific' in nature." *Threet v. Corr. Health Care Mgmt. of Oklahoma, Inc.*, No. CIV-07-0943-HE, 2009 WL 3335596, at *1 (W.D. Okla. Oct. 15, 2009) (citing *Kumho Tire Co. Ltd. v.. Carmichael*, 526 U.S. 137, 147-49 (1999)).

To perform its gatekeeper role, the Court "first determine[s] whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). If the expert is qualified,

the Court then analyzes whether the proposed testimony is relevant, meaning it will help the trier of fact, and reliable. *Id.*

"Reliability questions may concern the expert's data, method, or his application of the method to the data." *Id*. Although the reliability assessment is highly fact specific, the ultimate objective "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. The proponent of expert testimony bears the burden of showing that the testimony is admissible. *Nacchio*, 555 F.3d at 1241.

## DISCUSSION

### A. Motion to Exclude Testimony of Dr. Adler

The jail defendants identified Dr. Adler as an expert witness.[1] Dr. Adler is a licensed medical doctor with a board certification in emergency medicine and a background in providing medical care in correctional settings. His qualifications to offer opinions related to correctional medical care are, for the most part,[2] not at issue. Rather, as Plaintiff notes, the primary issue is whether Dr. Adler's opinions are reliable and relevant.

---

[1] The jail defendants include the Board of County Commissioners, the Oklahoma County Criminal Justice Authority, Jail Administrator Williams, and the individual detention officers named as defendants.

[2] Plaintiff also contends that Dr. Adler is unqualified to render opinions on Mr. Davis's psychiatric condition or care. Dr. Adler's report opines that individuals with psychiatric symptoms like Mr. Davis's presentation are not uncommon on the mental health unit. Given the Court's conclusion that the Dr. Adler's report does not satisfy Rule 702's requirements, it is unnecessary to determine whether this limited observation is within the scope of Dr. Adler's expertise.

3

Rule 702 permits expert testimony only where the proponent has demonstrated that the testimony has a sufficient factual foundation and is the product of reliable principles and methods. Under this standard, "opinions are no longer admissible simply by showing that someone is well-educated or experienced in a given area and that he/she has drawn some conclusions about issues in the case. It does not suffice for an expert to say, in effect, 'trust me, I know.'" *Threet*, 2009 WL 3335596, at *4. But that is essentially what Dr. Adler does.

Dr. Adler's report largely consists of factual narrative followed by his observation as to what the underlying facts show, including conclusions that there is "no evidence" or no "information or testimony" suggesting that Mr. Davis communicated his physical symptoms to anyone at the jail. These statements do not involve the application of scientific, technical, or specialized knowledge but instead express opinions that are "essentially factual matters as to which expert testimony is inappropriate and/or unnecessary." *Id*. at *3. Moreover, "opinions that 'there is no evidence' as to a particular fact…. are not ordinarily proper expert testimony." *Richardson v. Watco Companies, Inc*., No. CIV-10-0047-HE, 2011 WL 12842517, at *3 (W.D. Okla. Apr. 29, 2011).

When Dr. Adler comes closer to expressing an opinion that might be the proper subject of expert testimony, he fails to identify facts, data, standards, practices, or any other reliable principles that support his conclusions. For example, Dr. Adler opines that it is probable that symptoms began after August 9th and that an earlier medical exam would not have changed the outcome, but he does not adequately explain the basis of these opinions. Dr. Adler also speculates about what Mr. Davis knew and inappropriately weighs in on the

4

credibility of a witness. *See Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995) (explaining that an expert opinion "must be based on facts which enable her to express a reasonably accurate conclusion as opposed to conjecture or speculation") (quotation marks and brackets omitted); *United States v. Toledo*, 985 F.2d 1462, 1470 (10th Cir. 1993) ("The credibility of witnesses is generally not an appropriate subject for expert testimony."). Overall, Dr. Adler's expert report is lacking in the indicia of reliability required of expert opinion testimony and impermissibly invades the province of the jury.

Given the deficiencies in Dr. Adler's report, Plaintiff's motion to exclude the testimony is granted. However, there is one additional point that must be addressed. The jail defendants' response contends that Plaintiff's counsel utilized AI to prepare his motion and violated Fed. R. Civ. P. 11 by including false case citations. In reply, counsel acknowledges that he used an AI drafting tool to assist in preparing his brief. He disputes that he violated Rule 11 because he maintained responsibility for the work and verified the accuracy of the case citations. In support, he included an exhibit purporting to verify his independent legal research and asserts that, although there is one misstatement in the brief, this was simply his own human editing error.

The Court is profoundly troubled by the legal profession's growing reliance on AI to draft briefs, which often results in citations to incorrect or nonexistent cases. *See Moore v. City of Del City,* No. 25-6002, 2025 WL 3471341, at *2 (10th Cir. Dec. 3, 2025) (unpublished) (explaining that the "careless use [of generative AI] can waste both judicial resources and the opposing party's time and money, and it can damage the credibility of the legal system"); *Mattox v. Prod. Innovations Rsch.*, LLC, No. 6:24-CV-235-JAR, 2025

5

WL 3012828, at *5 (E.D. Okla. Oct. 22, 2025) ("While such tools can enhance efficiency, they also create a new professional hazard, synthetic authority presented as precedent."). However, at this point, the Court takes counsel at his word that he personally verified the cases prior to submitting the brief and that the lone misstatement was an oversight. Further, contrary to the jail defendants' implication, the Court is not of the opinion that the cases cited in the briefing are so dissimilar as to rise to the level of a misrepresentation or sanctionable conduct.

### B. Motion to Exclude Testimony of Nurse Wild

The medical defendants[3] have identified Kathryn J. Wild, RN as an expert witness that will opine on correctional healthcare standards and the care, treatment, and monitoring of Mr. Davis while he was detained. Plaintiff argues that Nurse Wild offers several opinions that are outside the scope of her expertise and challenges the reliability and relevance of the other opinions.

When an opposing party challenges an expert's opinion as outside the scope of his expertise, "[t]he dispositive question" is whether the issue upon which the expert is opining "is within the reasonable confines of [the expert's] subject area." *Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965, 970 (10th Cir. 2001) (internal quotation marks omitted). This inquiry is "specific, not general." *Kumho*, 526 U.S. at 156. Thus, "the issue with regard to expert testimony is not the qualifications of a witness in the abstract, but

---

[3] The medical defendants include Turn Key Health Clinics, William Cooper, Sinead Eastman, Jessica Hallock, Betty Horn, Alicia Irvin, Amanda Merriott, Sanaria Okongor, and Misty Williams.

whether those qualifications provide a foundation for a witness to answer a specific question." *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092–93 (W.D. Okla. 2009) (brackets and quotation omitted omitted). The proponent of the expert testimony must therefore establish that the expert's qualifications are not only "adequate in a general, qualitative sense," but also "specific to the matter he proposes to address as an expert." *Id*. at 1093.

Plaintiff argues that Nurse Wild is not qualified to offer opinions outside her correctional nursing expertise, including opinions as to causation, medical diagnosis, the adequacy of mental health care, or jail operations. Defendants respond that Nurse Wild will not offer opinions as to causation, diagnosis, proper psychiatric evaluations, or general jail custodial failures, but that opinions as to the appropriateness of the medical staff's actions based on Mr. Davis's clinical presentation are well within her scope of expertise. Nurse Wild is a registered nurse and a Certified Corrections Healthcare Professional. The Court will not belabor the point, but her expert report and curriculum vitae detail her decades of experience as a nurse in correctional settings. Given this background, and defendants' concession that she will not testify as to causation, diagnosis, or general custodial deficiencies, Nurse Wild is qualified to offer opinions as to whether the medical staff responded appropriately and complied with applicable standards based on Mr. Davis's clinical presentation. Additionally, although Nurse Wild is not an expert as to jail operations in general, her experience renders her qualified to offer opinions as to how medical and nursing services operate in a correctional setting.

Further, as a general matter, Nurse Wild's methodology is sufficiently sound and the basis of her opinions sufficiently identified such that her testimony satisfies Rule 702. She reached her opinions by reviewing medical records, deposition testimony, facility documentation and other evidence and then applying her experience in correctional health care. Further, and importantly, she identifies the correctional health care standards that govern and the facts that support her opinions. Although her explanation and analysis could certainly have been more robust, her methodology and factual basis are sufficiently reliable. To the extent Plaintiff has identified weaknesses in her testimony, those topics are more appropriately explored on cross examination. *See Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) ("[T]he burden is on opposing counsel through cross-examination to explore and expose any weaknesses in the underpinnings of the expert's opinion.") (quotation omitted).

However, Nurse Wild's report suffers from two deficiencies that render certain opinions unreliable or unhelpful to the jury. First, her opinion that the medical and mental health staff were not deliberately indifferent is an impermissible legal conclusion. Although an expert witness may testify about an ultimate issue, an "expert may not state legal conclusions drawn by applying the law to the facts." *A.E. By & Through Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991). Although "[t]he line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern," *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (quotation omitted), several courts have found expert testimony that a defendant acted with "deliberate indifference" to be an impermissible legal conclusion. *See Chrisman v. Bd. of*

*Cnty. Commissioners of Oklahoma Cnty.*, No. CIV-17-1309-D, 2021 WL 5913718, at *5 (W.D. Okla. Sept. 30, 2021) (ruling that expert's opinion that defendants were guilty of deliberate indifference "draws a legal conclusion, is inappropriate, and is thus inadmissible"); *DuBois v. The Bd. of Cnty. Commissioners of Mayes Cnty.*, No. 12-CV-677-JED-PJC, 2016 WL 907971, at *4 (N.D. Okla. Mar. 9, 2016) (ruling that "it is improper for an expert to opine that a jail's actions or inactions constitute 'deliberate indifference'"); *Poore v. Glanz*, No. 11-CV-797-JED-TLW, 2014 WL 4263225, at *5 (N.D. Okla. Aug. 29, 2014) (concluding that it would be "inappropriate for [the expert] to specifically opine on whether he believes deliberate indifference is present in this case"). Although testimony that certain conduct was appropriate (or deficient) based on accepted standards or practices may be admissible, an expert should avoid labeling the defendant's actions as "free from deliberate indifference." The term deliberate indifference has a specific legal definition in the § 1983 context that the Court will define for the jury. Permitting Nurse Wild to opine that the medical defendants did not act with deliberate indifference would supplant, rather than assist, the jury in their decision-making process.

Second, Nurse Wild's report includes factual narrative followed by conclusions that there is "no evidence" or "no documentation" that Mr. Davis verbalized or demonstrated pain or distress. These opinions do not involve the application of any specialized medical or nursing knowledge and are simply based on testimony from staff stating that Mr. Davis did not request help and the absence of any reports of pain in the medical charting. The Court is confident that the jury, after being presented with testimony from the relevant staff and records from the jail, will be able to discern whether any staff member observed or

documented Mr. Davis experienced abdominal pain without the need for expert testimony on this particular point.

Nurse Wild's opinions that the medical staff did not act with deliberate indifference and that there is no evidence of certain facts is excluded. The remaining aspects of the motion are denied.

### C. Motion to Exclude Testimony of Nurse Roscoe

Plaintiffs have identified Lori Roscoe, Ph.D., APRN as an expert witness that will opine on standards of care and the care provided to Mr. Davis while he was detained. The medical defendants challenge two of Nurse Roscoe's opinions, so the Court trains its focus on those issues. First, they argue that she is unqualified to offer opinions as to whether the actions of a licensed professional counselor that saw Mr. Davis during his incarceration were appropriate. Second, they argue that her opinions regarding the scope of practice of a licensed practical nurse are unreliable.

As to the first challenge, Nurse Roscoe is a nurse practitioner and Certified Correctional Health Professional with decades of experience in correctional healthcare, including with policy development, staff supervision, and administration. Nurse Roscoe's training and experience render her qualified to offer opinions about correctional nursing standards and practices. The medical defendants argue that Nurse Roscoe strayed outside the scope of this expertise by opining on the actions of a licensed professional counselor. Specifically, they object to her opinion that the LPC that saw Mr. Davis at the jail should have notified medical staff of his condition to rule out medical causes for his psychosis and should have escalated care to a mental health prescriber for potential treatment of his

psychosis. Although Nurse Roscoe is not a licensed professional counselor, she has experience in correctional healthcare operations and staff supervision. Her opinions are grounded in that expertise as they speak to when correctional healthcare staff should escalate care to another provider as opposed to the quality of the counseling provided by the LPC or the adequacy of the psychiatric treatment provided to Mr. Davis. Nurse Roscoe's experience and training are sufficient to render her qualified to opine on standards and practices for referring patients in correctional settings for additional evaluation and treatment.

As to the second challenge, the medical defendants contend that Nurse Roscoe's opinion that the LPN acted outside the scope of her practice by making diagnostic decisions, and specifically by attributing Mr. Davis's change in condition to a mental health problem without referring him for a medical evaluation, is unreliable because she does not cite any authority to support her opinion. Further, the medical defendants contend that the relevant authority describing the standards for nursing practice actually grant discretion to a LPN in these circumstances, which undermines the basis of Nurse Roscoe's opinion. The Court agrees Nurse Roscoe's opinion that the LPN "exceeded the scope of her practice" or acted "far outside the scope of LPN practice" is not supported by sufficient facts or reliable methods and principles. Nurse Roscoe's report does not cite the standards defining the scope of practice for an LPN. Her report does briefly note that the role of an LPN is to report abnormal findings to a provider and not to diagnose conditions. However, she fails to adequately support her characterization of the LPN's referral to the jail's mental health unit as an impermissible "diagnostic decision."

Additionally, Nurse Roscoe's deposition testimony indicates that the basis of her criticism of the LPN's actions is not necessarily that she referred him to mental health, but that she did not also refer him for a medical evaluation given his symptoms. Her report opines that the LPN's failure to refer to a medical provider deviated from the standard of nursing of care. The medical defendants argue that any suggestion that the LPN's action fell below the standard of care should also be disallowed because it is not supported by reference to facts or applicable authorities. Nurse Roscoe's report identifies the Oklahoma Administrative Code's requirement for a medical screening and that foundational nursing education indicates the need to refer for a medical evaluation, the need for vital signs, and the need for proper charting. She then identifies the facts that support her conclusion that the LPN's actions deviated from these standards in certain respects. Although Nurse Roscoe's explanation of the applicable standards could have been more detailed, her opinion that the LPN's actions deviated from accepted standards is sufficient to satisfy Rule 702's reliability requirements.

Accordingly, Nurse Roscoe's opinions that the LPN's action exceed her scope of practice are excluded. The medical defendants' motion is otherwise denied.

## CONCLUSION

As set out above, Plaintiff's Motion to Exclude or Limit Testimony of Dr. Paul Adler [Doc. Nos. 131] is GRANTED, Plaintiff's Motion to Exclude or Limit Testimony of Kathryn J. Wild, RN [Doc. Nos. 130] is GRANTED in part and DENIED in part, and Medical Defendants' Motion to Exclude the Expert Opinions of Lori Roscoe, PhD., APRN [Doc. Nos. 123] is GRANTED in part and DENIED in part.

IT IS SO ORDERED this 3rd day of February, 2026.

                                                           DAVID L. RUSSELL
                                                           UNITED STATES DISTRICT JUDGE