UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KIZZIE SIMS, individually and as Special Administrator of the Estate of Gregory Neil Davis, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  CIV-23-780-R |
| BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER**

In a prior order [Doc. No. 179], the Court denied in part the Motion for Summary Judgment filed by Defendant Sanaria Okongor. Now before the Court is a Motion to Reconsider and Amend Order Denying her Motion for Summary Judgment [Doc. No. 183], to which Plaintiff responded in opposition [Doc. No. 225].

Where, as here, a party seeks reconsideration of a non-final order, the Court has the inherent power to revisit and amend the order as justice requires. *See* Fed. R. Civ. P. 54(b); *Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1243 (10th Cir. 2007). "For guidance, the court may look to the standard used to review a motion made pursuant to Federal Rule of Civil Procedure 59(e)." *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013) (unpublished). Under Rule 59(e), "[g]rounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v.*

1

*Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Reconsideration is typically only "appropriate where the court has misapprehended the facts, a party's position, or the controlling law" but is inappropriate "to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id*. Stated another way, a motion for reconsideration "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. General Motors Corp.*, 846 F.Supp. 1482, 1483 (D. Kan. 1994).

Ms. Okongor contends that the Court misapprehended the pertinent facts and misapplied the controlling law when it concluded that a genuine factual dispute precluded summary judgment on Plaintiff's claim under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs. She raises two main arguments in support of reconsideration.

First, Ms. Okongor contends the Court erroneously concluded that there were genuine factual disputes as to whether she fulfilled her gatekeeping role because, as a licensed professional counselor, she was qualified to treat Mr. Davis's mental health needs. Her argument basically boils down to: an LPC like herself is qualified as a matter of law to diagnose and treat mental disorders[1] and, based on her observations of Mr. Davis, she

---

[1] Ms. Okongor's motion for reconsideration cites to Oklahoma's Licensed Professional Counselor's Act, 59 O.S. § 1901 et seq., which defines "counseling" as including diagnosis and treatment of mental disorders. This authority was not referenced in her motion for summary judgment. Instead, this is how Ms. Okongor described her role at the jail in her summary judgment briefing: "During these assessments, Counselor Okongor's role was to assess and evaluate symptoms; as well as provide crisis intervention and grief counseling services, if necessary. *Ex. 121-6, Deposition of Alicia Irvin, 12:01-03, 90:12-21*." Doc. No. 129 at p. 20 (emphasis in original). In support of this assertion, she cites to page 12 and page 90 of Dr. Irvin's deposition, but these pages are not included in the materials she submitted with her summary judgment briefing. Ms. Okongor's briefing also asserts that Dr. Irvin had "no criticisms of Counselor Okongor's assessments or judgment" and Dr. Irvin "agreed with her decision-making." However, she does not cite to specific evidence supporting these statements. *See* Doc. No. 129 at p. 21; Doc. No. 168 at p. 3. Further, Ms.

exercised her professional judgment in deciding to continue monitoring Mr. Davis rather than escalating his care to a psychiatrist or other medical provider.[2]

To be sure, the mere exercise of professional judgment or even negligent misdiagnosis does not rise to the level of deliberate indifference. *See Self v. Crum,* 439 F.3d 1227, 1232 (10th Cir. 2006). And a jury may ultimately agree with Ms. Okongor's view of the evidence. But summary judgment is only appropriate where there is "is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(c). Here, there is evidence in the record that discloses a genuine dispute as to whether Ms. Okongor knew of and disregarded a substantial risk to the inmate's health. Namely, the evidence includes the following:

- Mr. Davis never received a medical screening or evaluation. Doc. No. 121-24.

- Turn Key's Chief Medical Officer testified that Mr. Davis's presentation could indicate a serious medical issue. Doc. No. 150-3, Cooper Depo, 66:13-67:24.

- Plaintiff's correctional nursing expert opined that Mr. Davis should have been evaluated to determine if his psychosis was related to a medical issue and Ms. Okongor should have referred him for a medical evaluation based on the symptoms he was presenting. Doc. No. 150-7, Roscoe Depo, 50:13-51:12, 69:13-21; Doc. No. 123-2 at p. 7-8.

- Dr. Irvin, Turn Key's director of psychological services, testified that she could not speak to whether Mr. Davis's symptoms would cause her any concern because she did not clinically see the patient. She indicated that a patient with psychosis and hallucinations would "possibly" warrant referral to a psychiatrist,

---

Okongor's testimony suggests that her role at the jail or abilities were in fact more limited than she is currently positing. Doc. No. 150-6 at 81:18-21; 88:19-24, 97:2-22.

[2] In advancing this argument, Ms. Okongor also contends that "[i]t is undisputed that *the* medical emergency in this case" arose when Mr. Davis's ulcer ruptured and that Plaintiff's medical expert conceded that the rupture did not occur until after Ms. Okongor's second visit. However, as explained in the Court's prior order and further below, Plaintiff has repeatedly argued that Mr. Davis suffered substantial harm not just from his ruptured ulcer, but also from his acute, untreated psychosis.

but it would vary depending on the patient. Doc. No. 121-6 at 37:11-38:25; 65:16-23

- Ms. Okongor was aware that Mr. Davis was in a prolonged state of psychosis when she saw him on August 6 and August 9. When asked whether Mr. Davis's symptoms gave her any "red flags" and how she uses the information that she gained from her observations, Ms. Okongor testified that "there was no immediate concern regarding his welfare." However, she also candidly responded that "more information would need to be derived," including information about his history, any diagnosis that he had, and his medication needs. Although acknowledging that more information was needed, she did not obtain the information. She did not obtain the information because there were other people, specifically a psychiatrist and medical practitioners, who were responsible for meeting with the inmates on the mental health floor. When asked whether she documented any sort of treatment for Mr. Davis, Ms. Okongor stated that the inmate would first meet with a mental health therapist and then meet with the psychiatrist. She typically reviews notes from any other providers before meeting with a patient and, given that the medical and mental health staff share a medical record and she had no information about his diagnosis or history, a fair inference is that she was aware that he had not been medically evaluated or seen by a medical provider. Ms. Okongor also testified that she would typically try to figure out why the medical screening is not in the record, it is up to her to obtain more information about the patient, and she did not do that in this case.  Doc. No. 150-6 at 45:3-47:22, 53:11-56:3 71:25-72:25; 102:12-103:6.

A reasonable juror, construing this evidence in Plaintiff's favor, could conclude that Ms. Okongor knew (or should have known) of an obvious need for a medical evaluation to address a serious health issue – his acute psychosis – but she did not do anything about it.[3] Instead, Mr. Davis was left to languish in an obvious state of psychosis, without a diagnosis as to the cause and without any treatment, other than what a jury could reasonably conclude

---

[3] Ms. Okongor contends that Dr. Borislow, a medical expert retained by Plaintiff, "conceded" that Mr. Davis's "medical emergency" did not occur until after Ms. Okongor's last visit. This description takes the testimony out of context and fails to construe the facts in the nonmovant's favor. Dr. Borislow repeatedly indicated that he did not see evidence of a medical emergency "leaving…to the side" or "not including" Mr. Davis's neuropsychiatric issue. *See* Doc. No. 150-8 at 58:5-21; 61:15-25; 62:25-64:7. He further testified that, in a hospital setting, Mr. Davis's psychotic presentation, without a prior history or cause, "clearly…warranted medical and psychiatric evaluation." *Id.* at 42:14-43:19.

was a perfunctory visit from a counselor every three days. Ultimately, even if Ms. Okongor has the ability, as a licensed professional counselor, to diagnose and treat a "mental disorder," there are competing facts and inferences regarding whether Ms. Okongor recognized a serious need for further treatment and then failed to refer Mr. Davis to someone who could provide it. Those competing facts and inferences preclude summary judgment.

Ms. Okongor's second main argument in support of reconsideration is that there is no causal relationship between Mr. Davis' untreated psychosis and his ultimate injury, which she describes as his death secondary to his perforated ulcer. This argument misstates Plaintiff's claim, which is not premised exclusively on his perforated ulcer or death. Rather, Plaintiff also contends that Mr. Davis experienced significant pain and suffering from his untreated psychosis and deteriorating condition. For the reasons explained in its prior order, there is a genuine factual dispute as to whether Mr. Davis suffered a substantial intermediate harm from the delay in medical treatment or diagnosis for his acute psychosis. Ms. Okongor's reframing of Plaintiff's claim does not warrant reconsideration.

Defendant has not provided sufficient grounds to warrant reconsideration of the Court's order denying her request for summary judgment on the § 1983 claim. Accordingly, Ms. Okongor's Motion to Reconsider and Amend Order Denying her Motion for Summary Judgment [Doc. No. 183] is DENIED.

IT IS SO ORDERED this 3rd day of April 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE